SHORE BANK,

and

HAMPTON ROADS BANKSHARES, INC.,

     Plaintiffs,

v.                      Civil Action No. 2:12cv336

SCOTT C. HARVARD,

     Defendant.

## OPINION AND ORDER

This matter is currently before the Court on Defendant Scott C. Harvard's ("Harvard") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. After examining the Complaint, Harvard's motion to dismiss and the associated memoranda, the Court finds that the facts and legal contentions are adequately presented and oral argument would not aid in the decisional process. Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). The matter is therefore ripe for decision. For the reasons set forth below, the Court **GRANTS** Harvard's motion to dismiss pursuant to Rule 12(b)(1).

## I.  FACTUAL HISTORY[1]

Plaintiffs Shore Bank ("Shore Bank") and Hampton Roads Bankshares, Inc. ("Hampton Roads Bankshares") (collectively, "Plaintiffs") are financial institutions organized under the laws of the Commonwealth of Virginia.  Shore Bank's principal place of business is in Olney, Virginia.  Hampton Roads Bankshares's principal place of business is in Norfolk, Virginia.  Shore Bank is a wholly owned subsidiary of Hampton Roads Bankshares.

Defendant Harvard is a resident of Virginia and the past President and Chief Executive Officer of Shore Bank and past Executive Vice President of DelMarVa Operations for Hampton Roads Bankshares.  Harvard entered into an Employment Agreement ("Employment Agreement") with Plaintiffs on January 8, 2008 in which he accepted both of the above positions.  Harvard's Employment Agreement contains several provisions concerning his compensation and benefits, including Paragraph 4(b), which provides for a "severance allowance" upon "termination for a

[1] The facts recited here are drawn from the Complaint and are assumed true for the purpose of deciding the motion currently before the Court.  They are not to be considered factual findings for any purpose other than consideration of the pending motion. See Clatterbuck v. City of Charlottesville, 841 F. Supp. 2d 943, 948 n.3 (W.D. Va. Jan. 18, 2012) (citing Warth v. Seldin, 422 U.S. 490, 501 (1975)) ("As with a motion to dismiss pursuant to 12(b)(6), in considering a motion to dismiss pursuant to Rule 12(b)(1) a court must accept as true all material factual allegations in the complaint and must construe the complaint in favor of the plaintiff.")

change in control event." Compl. Ex. 1, ECF No. 1-4.

Specifically, Paragraph 4(b) provides:

> If [Harvard's] employment is terminated by the Bank in
> accordance with Section 3(a)(iii) or [Harvard]
> terminates his employment pursuant to Section
> 3(b)(iii) hereof, then:
>
> . . .
>
> (b) The Employer shall pay [Harvard] a severance
> allowance in sixty (60) equal monthly payments
> commencing on the last day of the month in which the
> Date of Termination occurs, the total amount of which
> will equal 2.99 times (2.99x) the base amount.

Id. Paragraph 3(b)(iii) entitles Harvard "to terminate his

employment pursuant to th[e] [Employment] Agreement within six

(6) months after the occurrence of a 'Change in Control' with

respect to [Hampton Roads Bankshares], its successor's or

assigns, (Employer's 'Parent Company')." Id. Such paragraph

goes on to define what constitutes a "Change in Control" under

the Employment Agreement. Id.

During the course of Harvard's employment, Plaintiffs began

participating in the United States Department of the Treasury's

Troubled Asset Relief Program ("TARP"), which program was

established on October 3, 2008 pursuant to the Emergency

Economic Stabilization Act of 2008 ("EESA"), 12 U.S.C. §§ 5201

et seq. Hampton Roads Bankshares began receiving TARP funds on

December 31, 2008. In preparation for its participation in

TARP, Hampton Roads Bankshares executed a letter with Harvard on

December 31, 2008 ("Letter") concerning its intent to

participate in TARP's Capital Purchase Program ("CPP"). In that Letter, Hampton Roads Bankshares stated that, as a condition of its participation, it was "required to make changes to existing compensation agreements" and that it "intend[ed] to apply [such] standards to all of its executive officers." Compl. Ex. 2, ECF No. 1-5. The Letter then set forth five paragraphs, including the following:

(1) *No Golden Parachute Payments*. The Company is prohibited from engaging in any golden parachute payment to you during any "CPP Covered Period." A "*CPP Covered Period*" is any period during which (A) you are an executive officer and (B) the [Department] holds an equity or debt position acquired from [Hampton Roads Bankshares] during the CPP.

. . .

(3) *Compensation Program Amendments*. Each of the Company's compensation, bonus, incentive, and other benefit plans, arrangements and agreements (including golden parachute, severance, and employment agreements (collectively, "*Benefit Plans*") with respect to you is hereby amended to the extent necessary to give effect to provisions (1) and (2) above and you agree to execute any such amendments as maybe necessary to implement the agreements contained in this letter.

Id. At the bottom of the three-page Letter, Harvard signed his name in a block containing the following statement: "Intending to be legally bound, I agree with and accept the foregoing terms on the date set forth below." Id. Hampton Roads Bankshares apparently began receiving TARP benefits on that same date,

4

December 31, 2008.[2]   See Compl. ¶ 12, ECF No. 1.  Harvard's

employment with both Plaintiffs continued until he submitted his

resignation to Shore Bank on June 24, 2009.

The instant action concerns a dispute between the parties

regarding Harvard's entitlement to the severance allowance

provided for in Paragraph 4(b) of the Employment Agreement

("Allowance").   See Compl. Ex. 1, ECF No. 1-4.   On March 13,

2012, Harvard sent Plaintiffs a letter seeking payment of the

Allowance.   See Compl. Ex. 3, ECF No. 1-6.   Since this demand,

Plaintiffs have consistently denied Harvard's request for three

reasons.   First, Plaintiffs assert that no "Change in Control"

occurred that would entitle Harvard to the Allowance.   Second,

Plaintiffs claim that, as recipients of TARP benefits, they are

barred from paying Harvard the Allowance, because such Allowance

is a "golden parachute payment" prohibited under TARP.   In

support of this position, Plaintiffs apparently sought guidance

from the United States Department of the Treasury ("Treasury")

concerning the Allowance, although the exact timing of

Plaintiffs' inquiry is unclear.[3]   According to Plaintiffs, the

---

[2] "Pursuant to the governing regulations, both Hampton Roads Bankshares
… and its wholly owned subsidiary, Shore Bank, are considered to be
'TARP recipients.'"   Compl. ¶ 13, ECF No. 1 (citing the governing
regulations).

[3] Plaintiffs allege no facts concerning this inquiry in their
Complaint.   Instead, Plaintiffs extensively quote letters, attached as
exhibits to the Complaint, that reference the inquiry.   Compl. ¶¶ 23-
24.   One such letter, sent from Plaintiffs' attorneys to Harvard's

5

Department advised them that an Interim Final Rule codified at
31 C.F.R. Part 30, which became effective on June 15, 2009,
prohibits Plaintiffs from paying Harvard the Allowance.
Finally, Plaintiffs contend that Harvard is not entitled to the
Allowance because, by signing the Letter, Harvard amended his
Employment Agreement to include TARP's prohibition of golden
parachute payments.

## II.  PROCEDURAL HISTORY

Prior to the commencement of this action, Harvard filed a
Complaint for Declaratory Judgment in the Norfolk Circuit Court
on May 22, 2012 seeking a declaratory judgment that Plaintiffs
must pay the legal fees and costs that Harvard has incurred and
will incur as a result of the parties' disagreement about the
Allowance, pursuant to Paragraph 11 of the Employment Agreement.
See Compl. Ex. 5, ECF No. 1-8.  In his complaint, Harvard
represented that he "intends to file a claim for breach of the
Employment Agreement...."  Id. ¶ 15.  However, there are no
facts before the Court suggesting that any such action has been

_____

attorneys, describes the inquiry as follows:  "As the Bank informed
Mr. Harvard more than two years ago, [the] Treasury has advised the
Bank that, because Mr. Harvard resigned after June 15, 2009, the date
on which [the] Treasury's Interim Final Rule entitled 'TARP Standards
for Compensation and Corporate Governance' became effective, the Bank
is not legally permitted to pay 'golden parachute' payments including
severance or insurance benefits."  Compl. Ex. 4, ECF 1-7.  Thus, it
appears that Plaintiffs contacted the Treasury shortly after Harvard's
resignation.

6

filed. Instead, Plaintiffs have preemptively sought relief in this Court.

Plaintiffs filed the instant action on June 14, 2012. The single-count Complaint seeks declaratory judgment that (1) the Allowance is a golden parachute payment prohibited by TARP and its corresponding regulations; and (2) Plaintiffs are prohibited from paying the Allowance, now or in the future, because they were recipients of TARP funds at the time Harvard resigned. Harvard filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on July 3, 2012. ECF No. 5. Harvard asks the Court to dismiss the single-count Complaint for want of subject matter jurisdiction and to award him attorney's fees pursuant to Paragraph 11 of the Employment Agreement. Plaintiffs filed their memorandum in opposition on July 16, 2012. ECF No. 8. On July 23, 2012, Harvard filed his reply memorandum. ECF No. 9. Therefore, the motion is fully briefed and ripe for this Court's consideration.

## III. LEGAL STANDARD

Harvard seeks to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), which permits a defendant to move for dismissal of a claim due to the court's lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); see also, A.W. ex rel. Wilson v. Fairfax Cnty. Sch. Bd., 548 F. Supp. 2d 219, 221 (E.D. Va. 2008). Federal district courts are

7

courts of limited subject matter jurisdiction. United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009) (citing Exxon Mobile Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005)). They may exercise "only the jurisdiction authorized them by the United States Constitution and by federal statute." Id. (citing Bowles v. Russell, 551 U.S. 205 (2007)). Accordingly, the Court must "presume ... that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." United States v. Poole, 531 F.3d 263, 274 (4th Cir. 2008) (citing Kokkenen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)) (emphasis in original). Having filed the instant action—thereby seeking to invoke the jurisdiction of the Court—Plaintiffs bear the burden of proving that this Court has subject matter jurisdiction. Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

A district court can resolve a motion to dismiss for lack of subject matter jurisdiction in two ways: (1) "[t]he court may find insufficient allegations in the pleadings, viewing the alleged facts in the light most favorable to the plaintiff, similar to an evaluation pursuant to Rule 12(b)(6)"; or (2) the court may conduct an evidentiary hearing and then weigh the evidence to determine whether the facts support the jurisdictional allegations. Lovern v. Edwards, 190 F.3d 648,

654 (4th Cir. 1999). If the Court determines that it lacks subject matter jurisdiction, it must dismiss the action in its entirety. Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006); see also Fed. R. Civ. P. 12(h)(3).

## IV. DISCUSSION

### A. Subject Matter Jurisdiction Generally

Plaintiffs' Complaint alleges a single count seeking declaratory judgment pursuant to 28 U.S.C. § 2201.[4] The Declaratory Judgment Act ("Act") provides that "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon filing of an appropriate pleading, may declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The United States Court of Appeals for the Fourth Circuit has set forth three essential requirements that must be met before a federal court may properly exercise jurisdiction over a declaratory judgment action:

> (1) the complaint [must] allege[] an "actual controversy" between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment;" (2) the court [must] possess[]

---

[4] Although Plaintiffs' purport to bring the instant action pursuant to various federal statutes (including TARP), the Complaint is styled as a "Complaint for Declaratory Judgment" and asserts one count seeking such judgment. Accordingly, the Court views the Complaint as alleging a claim under the Act and not under the summarily listed federal statutes.

9

> an independent basis for jurisdiction over the parties
> (e.g., federal question or diversity jurisdiction);
> and (3) the court [must] not abuse its discretion in
> its exercise of jurisdiction.

Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386

F.3d 581, 592 (4th Cir. 2004). Harvard's motion to dismiss

challenges the presence of an independent basis for jurisdiction

of Plaintiffs' Complaint. Such an independent basis is required

because the Act is procedural only. See Vaden v. Discover Bank,

556 U.S. 49, 70 n.19 (2009). It operates to "enlarge[] the

range of remedies available in federal courts" without, in any

way, extending federal court jurisdiction. Skelly Oil Co. v.

Phillips Petroleum Co., 339 U.S. 667, 671 (1950); see also Volvo

Constr. Equip., 386 F.3d at 592. Accordingly, to prove that the

jurisdictional requirements are met in this case, Plaintiffs

must set forth a separate basis for jurisdiction of the action.

Skelly Oil, 339 U.S. at 671; see also Volvo Constr. Equip., 386

F.3d at 592. In the Complaint, Plaintiffs cite original federal

question jurisdiction pursuant to 28 U.S.C. § 1331 as the sole

basis for the Court's jurisdiction.

District courts have original jurisdiction pursuant to 28

U.S.C. § 1331 "of all civil actions arising under the

Constitution, laws, or treaties of the United States." 28

U.S.C. § 1331. The Fourth Circuit has observed that "[t]here is

no 'single, precise definition' of what it means for an action

to 'arise under' federal law." <u>Verizon Md., Inc. v. Global</u> <u>Naps, Inc.</u>, 377 F.3d 355, 362 (4th Cir. 2004) (quoting <u>Merrell</u> <u>Dow Pharm. Inc. v. Thompson</u>, 478 U.S. 804, 808 (1986)). Indeed:

> The Supreme Court has recognized § 1331 jurisdiction in a variety of cases, such as (1) when a federal right or immunity forms an essential element of the plaintiff's claim; (2) when a plaintiff's right to relief depends upon the construction or application of federal law, and the federal nature of the claim rests upon a reasonable foundation; (3) when federal law creates the cause of action; and (4) when the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.

<u>Id.</u> (internal citations and quotations omitted). Ultimately, whether a claim arises under Federal law is a nuanced question, one that requires a court to make "sensitive judgments about congressional intent, judicial power, and the federal system." <u>Merrell Dow Pharms.</u>, 487 U.S. at 810. The Supreme Court has emphasized that, in conducting the jurisdictional inquiry, lower courts must exercise "prudence and restraint" with "an eye to practicality and necessity." <u>Id.</u> (quoting <u>Franchise Tax Bd. v.</u> <u>Constr. Laborers Vacation Trust</u>, 478 U.S. 1, 20 (1983)).

The well-pleaded complaint rule governs a district court's determination of its jurisdiction under 28 U.S.C. § 1331. Specifically, such rule "requires that federal question jurisdiction does not exist unless a federal question appears on the face of a plaintiff's properly pleaded complaint." <u>Columbia</u> <u>Gas Transmission Corp. v. Drain</u>, 237 F.3d 366, 370 (4th Cir.

11

2001) (citing Merrell Dow Pharms., 478 U.S. at 808). In a declaratory judgment action, the well-pleaded complaint rule "operates no differently" when the declaratory judgment plaintiff is alleging an affirmative claim arising under federal law against the declaratory judgment defendant. Id. But, absent such a claim, the jurisdictional inquiry shifts from the face of the declaratory judgment plaintiff's well-pleaded complaint to the nature of the coercive action that would have been brought absent the availability of declaratory relief. See 13D C.A. Wright et al., Federal Practice and Procedure § 3566, at 275-76 (3d ed. 2008); see also Columbia Gas, 237 F.3d at 370. In such a case, "the proper jurisdictional question is whether the complaint alleges a claim arising under federal law that the declaratory judgment defendant could affirmatively bring against the declaratory judgment plaintiff." Columbia Gas, 237 F.3d at 370; see also Franchise Tax Bd., 463 U.S. at 19 & n.19.

A federal court lacks jurisdiction of a declaratory judgment action "if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action." Franchise Tax Bd., 463 U.S. at 16 (quoting 10A C. Wright et al., Federal Practice and Procedure § 2757, at 744-45 (2d ed. 1983)). Therefore, it is well-settled that "[a] plaintiff cannot evade the well-pleaded complaint rule by using the declaratory judgment remedy to

recast what are in essence merely anticipated or potential federal defenses as affirmative claims for relief under federal law." Morgan Cnty. War Mem'l Hosp. ex rel. Bd. of Dirs. Of War Mem'l Hosp. v. Baker, 314 Fed. App'x 529, 533 (4th Cir. 2008) (quoting New Orleans & Gulf Coast Ry. Co. v. Barrois, 533 F.3d 321, 329 (5th Cir. 2008)). In such a case, "it is the character of the threatened action, and not of the defense, which will determine whether there is federal question jurisdiction." Pub. Serv. Comm'n v. Wycoff, 344 U.S. 237, 248 (1952). "Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law." Id.

Harvard claims that dismissal for lack of jurisdiction is appropriate because Plaintiffs' Complaint seeks only a declaration that they have a valid federal law defense to Harvard's threatened state law breach of contract action. Plaintiffs disagree and assert two bases upon which they claim the Court may exercise federal question jurisdiction of the instant declaratory judgment action. First, Plaintiffs argue that their Complaint "undoubtedly raises a federal question sufficiently substantial to justify federal question jurisdiction" because it seeks this Court's interpretation and application of a federal law—namely, TARP. ECF No. 8 at 7.

13

Second, Plaintiffs contend that Harvard's potential claims against them also support a finding of federal jurisdiction. Specifically, Plaintiffs assert (1) that Harvard's threatened state law breach of contract suit is, at its core, a challenge to TARP's prohibition on "golden parachute payments," and (2) that Harvard's potential claims include a federal lawsuit pursuant to 12 U.S.C. § 5229 for review of the Secretary of Treasury's decision to prohibit the Allowance as a golden parachute payment. The Court addresses each alleged basis for its exercise of jurisdiction in turn.

**B. Substantial Federal Question in the Complaint**

Plaintiffs first contend that their Complaint for Declaratory Judgment presents the Court with a substantial federal question, namely whether TARP and its associated regulations bar Plaintiffs from paying Harvard the Allowance. Plaintiffs are correct that, as a general matter, federal question jurisdiction "will lie over state-law claims that implicate significant federal issues." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005). Indeed, the Court considers this basis for jurisdiction in further detail below. However, Plaintiffs overlook the initial question before the Court: the proper focus of the jurisdictional inquiry.

14

Unless Plaintiffs' Complaint states an affirmative claim against Harvard arising under federal law, the jurisdictional inquiry focuses on the nature of the coercive action that Harvard, the declaratory judgment defendant, could have brought against Shore Bank and Hampton Roads Bankshares, the declaratory judgment plaintiffs. Columbia Gas, 237 F. at 370; see also 10B Wright et al., supra, § 2767, at 654-58. The Court finds that the Complaint states no such affirmative claim. Specifically, Plaintiffs do not seek a declaration that they have "an affirmative federal right." 13D Wright et al., supra, § 3566, at 281; see also Ormet Corp. v. Ohio Power Co., 98 F.3d 799, 807-08 (4th Cir. 1996) (applying the substantial federal question doctrine to support jurisdiction of an action for declaratory and injunctive relief when the plaintiff claimed an affirmative right based on various statutory definitions set forth in the Clean Air Act). Nor do Plaintiffs ask the Court to declare that Harvard "does not have a right under federal law" that he is otherwise claiming. 13D Wright et al., supra, § 3566. at 282; see also Franchise Tax Bd., 463 U.S. at 19 & n.19 (noting that "Federal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question," as is consistently the case in "suits by

15

alleged patent infringers to declare a patent invalid"). Rather, Plaintiffs ask the Court to declare that they are immune, under TARP, from paying the Allowance that Harvard seeks, as provided for in the Employment Agreement. Accordingly, Plaintiffs' federal claim (TARP's prohibition against golden parachute payments) "arise[s] only as a defense to [Harvard's threatened] common-law action for breach of contract."[5] 13D Wright et al., supra, § 3566, at 283. The Complaint simply does not "alleg[e] an affirmative claim arising under federal law against [Harvard,] the declaratory judgment defendant." Columbia Gas, 237 F.3d at 370. Therefore, the Court does not look to the face of Plaintiffs' well-pleaded Complaint to determine its jurisdiction. Instead it asks "whether [such] [C]omplaint alleges a claim arising under federal law that [Harvard] could affirmatively bring against [Plaintiffs]." Id.

## C. Potential Coercive Actions

Plaintiffs cite two potential claims that Harvard could bring that they argue support the Court's jurisdiction of this

---

[5] To be clear, the relevance of TARP to Harvard's breach of contract claim is of no significance to the Court's determination of where to properly focus the jurisdictional inquiry. Such question is only presented once the Court has determined that it should focus on Harvard's potential coercive action and not on the face of Plaintiffs' well-pleaded declaratory judgment Complaint. Then, the question is relevant only in deciding whether the breach of contract action raises a federal issue sufficient to support jurisdiction of this action.

16

matter: (1) Harvard's threatened breach of contract claim against Shore Bank; and (2) a claim that Harvard could bring pursuant to 12 U.S.C. § 5229 for judicial review of the Treasury's position concerning the Allowance. The Court addresses each in turn.

### i. Breach of Contract

In his state court declaratory judgment action, Harvard alleged that he "intends to file a claim for breach of the Employment Agreement against Shore Bank." Compl. Ex. 5, ECF No. 1-8. This breach of contract claim is the only cause of action Harvard has threatened to assert against Plaintiffs. Plaintiffs argue that, at its core, the threatened breach of contract claim is nothing more than a challenge to TARP's prohibition on golden parachute payments and, because Harvard signed the Letter amending the Employment Agreement to include such prohibition, "Harvard must prove, as a part of his claim, that TARP does not prohibit [the Allowance]." ECF No. 8 at 9. Harvard responds, first, that his stated intention to file a breach of contract claim does not give the Court enough information to determine whether such future claim will raise a substantial federal question and, therefore, that this action for declaratory judgment is premature. Harvard further argues that, even if the Court considers the threatened action, such action does not present a substantial federal question because neither the TARP

17

prohibition nor any subsequent waiver of the Allowance based on such prohibition are essential elements of a state law breach of contract claim. Harvard argues that the alleged prohibition and waiver are instead defenses to such a claim and, accordingly, cannot serve as the basis for this Court's jurisdiction of Plaintiffs' declaratory judgment action.

### a. Nature of Harvard's Claim

As noted above, there are three jurisdictional requirements that must be met before a federal court may exercise jurisdiction over a declaratory judgment action. Volvo Constr. Equip., 386 F.3d at 592. First, the case must present a justiciable controversy under Article III of the United States Constitution. Id. Second, the Court must have an independent basis for jurisdiction of such controversy. Id. And, finally, the Court's exercise of jurisdiction must not otherwise constitute an abuse of its discretion. Id. at 594. Harvard's motion to dismiss contends only that the second requirement is wanting, namely that the court does not possess an independent basis for jurisdiction. However, in disputing the Court's ability to consider the nature of his threatened breach of contract action, Harvard appears to suggest that the first requirement—that of a justiciable case or controversy—is also lacking.

When determining whether an actual controversy exists in a declaratory judgment action, the Court must ask "whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (quoting Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)); see also U.S. Const. Art. III, § 2 (setting forth the case or controversy requirement). In order to satisfy this requirement, a plaintiff must possess standing to sue, meaning (in this context) that Harvard's threatened action must present a "controversy that qualifies as an actual controversy under Article III of the Constitution." Volvo Constr. Equip., 386 F. 3d at 592. For standing to exist: "(1) the plaintiff must allege that he or she suffered an actual or threatened injury that is not conjectural or hypothetical, (2) the injury must be fairly traceable to the challenged conduct, and (3) a favorable decision must be likely to redress the injury." Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

There is no doubt that this standard would have been met if Harvard had, in fact, filed the threatened action.[6]  Harvard argues that it is "uncertain" whether he will file any action and, if he does, whether he will proceed in state or federal court and, similarly, whether he will assert only the state law claim for breach of contract or other, related claims.  The Court's inquiry, however, is not governed by the procedural posture of Harvard's threatened claim.  Even when no lawsuit has been filed, a dispute can be sufficiently concrete to create a justiciable controversy.  See Standard Fire Ins. Co. v. Armstrong, No. 3:12cv181, 2012 WL 3730644, at *3 (E.D. Va. Aug. 28, 2012).  The Fourth Circuit has expressly recognized that, in some cases, "the threat of future litigation may give rise to an actual controversy."  Id. (citing Volvo Constr. Equip., 386 F.3d at 593 n.12).  Where "real and substantial facts" show that a declaratory judgment plaintiff has disputed a declaratory judgment defendant's contractual rights, thereby putting itself in a position legally adverse to that defendant (and has maintained such position), there is clearly a substantial controversy between such parties "of sufficient immediacy and reality to warrant the issuance of declaratory judgment."

---

[6] Harvard could establish an actual injury based on the nonpayment of the Allowance, which injury is fairly traceable to Plaintiffs' ongoing refusal to pay the Allowance, as provided for in the Employment Agreement.  Furthermore, a favorable decision would certainly redress such injury because it would entitle Harvard to receive the Allowance.

MedImmune, 549 U.S. at 127 (quoting Maryland Cas. Co., 312 U.S. at 273); see also Standard Fire Ins. Co., 2012 WL 3730644, at *3.

Here, Plaintiffs have repeatedly denied Harvard the Allowance provided for in Paragraph 4(b) of the Employment Agreement, expressly disputing his right to such payment on two grounds: (1) that the "Change in Control" entitling Harvard to the Allowance never occurred; and (2) that TARP prohibits the Allowance regardless of whether Harvard would otherwise qualify for it, both as a general matter and because Harvard signed the December 31, 2008 Letter. Accordingly, a substantial controversy exists between the parties, who clearly have adverse legal interests. Further, the nature of such controversy is neither speculative nor uncertain. Harvard has expressly threatened, in his pending state court declaratory judgment action, to file a breach of contract claim against at least one Plaintiff (Shore Bank). Although jurisdiction of a declaratory judgment action may be lacking "[w]here a declaratory judgment plaintiff offers 'no evidence whatever of any past, pending, or threatened action,'" that is not the case before the Court. Franchise Tax Bd., 463 U.S. at 16 n.14 (quoting Wycoff, 344 U.S. at 248) (emphasis added). Given the facts before the Court concerning the threatened claim and the parties' stated positions with respect to such claim, this is not a case

21

involving a dispute that has "'not yet matured to a point where [the Court] can see what, if any, concrete controversy will develop.'" Franchise Tax Bd., 463 U.S. at 16 n.14 (quoting Wycoff, 344 U.S. at 240-41). Rather, it is clear that the underlying dispute will likely progress to at least the threatened action. Accordingly, the Court finds that the first jurisdictional requirement—a justiciable controversy between the parties—is satisfied. The Court will, therefore, consider the threatened breach of contract claim to determine whether it necessarily presents a federal question. Discover Bank v. Vaden, 396 F.3d 366, 371 (4th Cir. 2005) (citing Franchise Tax bd., 463 U.S. at 19).

## b. Federal Question Jurisdiction of Harvard's Claim

Jurisdiction of a claim exists pursuant to 28 U.S.C. § 1331 when such claim "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In the "vast majority" of cases, a cause of action arises under the law that creates it. Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004). Accordingly, the first step in determining whether a claim arises under federal law is to "discern whether federal or state law creates the cause of action." Pinney v. Nokia, Inc., 402 F.3d 430, 442 (4th Cir. 2005) (quoting Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir.

1994). Here, neither party disputes that state law creates Harvard's threatened breach of contract claim.

Where state law creates the cause of action, "federal jurisdiction over [the] state law claim will lie if a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn v. Minton, No. 11-1118, 2013 WL 610193, at *6 (U.S. Feb. 20, 2013); see also Grable & Sons, 545 U.S. at 314; Franchise Tax Bd., 463 U.S. at 13. However, such jurisdiction exists only in a "'special and small category' of cases," as discussed below. Gunn, 2013 WL 610193, at *5 (quoting Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 699 (2006)); see also Pinney, 402 F.3d at 442. The mere presence of some federal issue is not sufficient to support federal jurisdiction. See Grable & Sons, 545 U.S. at 314.

A state law claim necessarily raises a federal issue if a question of federal law "is a necessary element of one of the well-pleaded state claims." Pinney, 402 F.3d at 442 (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 808 (1988)); see also Franchise Tax Bd., 463 U.S. at 13. The presence of a federal law defense to a state law cause of action will not support federal question jurisdiction of such action. See Franchise Tax Bd., 463 U.S. at 10-11. "[The] right or

23

immunity created by the Constitution or laws of the United States must be an element, and an essential one of the plaintiff's [claim]." Id. (quoting Gully v. First Nat'l Bank, 299 U.S. 109, 112 (1936)). "If [the] plaintiff can establish, without the resolution of an issue of federal law, all of the essential elements of his state law claim, then the claim does not necessarily depend on a question of federal law." Pinney, 402 F.3d at 442 (citing Franchise Tax Bd., 463 U.S. at 13-14).

The elements of a breach of contract under Virginia law[7] are "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." Sunrise Continuing Care, LLC v. Wright, 277 Va. 148, 154 (2009) (quoting Filak v. George, 267 Va. 612, 619 (2004)). The parties apparently dispute the existence of a legal obligation to pay the Allowance. Specifically, Plaintiffs contend that, because TARP prohibits participants from making golden parachute payments and because Harvard amended the Employment Agreement to acknowledge the

---

[7] The Court looks to Virginia law because the parties do not dispute that breach of contract is a state-created action, nor that the Employment Agreement was executed in Virginia and contemplated performance in Virginia only. See Best Med. Intern. V. Tata Elxsi Ltd., No. 1:10cv1273, 2011 WL 5843627, at *4 (E.D. Va. Nov. 21, 2011) (describing the application of Virginia choice of law rules to actions involving contracts). Additionally, the Employment Agreement specifically provides that it "shall be governed and construed in accordance with the Laws of the Commonwealth of Virginia." Compl. Ex. 1, ECF No. 1-4.

24

applicability of TARP's prohibition to Plaintiffs, Plaintiffs were under no legal obligation to pay Harvard the Allowance and their failure to do so cannot, therefore, constitute a breach of the Employment Agreement unless or until Harvard shows that the Allowance is not a prohibited payment under TARP. Harvard argues that Paragraph 4(b) of the Employment Agreement created a legal obligation in Plaintiffs to pay him the Allowance upon termination of his employment within six months of a "Change in Control" and that Plaintiffs breached the Employment Agreement when they failed to pay him the Allowance. Harvard contends that the existence of TARP's prohibition and the Letter, which he characterizes as a waiver, are defenses to, as opposed to essential elements of, a Virginia breach of contract action.

Harvard is correct that the mere existence of a regulation under TARP generally prohibiting golden parachute payments would not be enough to create federal question jurisdiction of this matter. See Campbell v. Hampton Roads Bankshares, Inc., No. 2:12cv567, 2013 WL 652427, at *3 (E.D. Va. Feb. 19, 2013) ("Defendants' argument—that they are prohibited by federal regulations from fulfilling their alleged obligations under the contract—is best seen as an assertion of the defense of legal impossibility…. [A]ny other allocation of the burdens in this case would be contrary to Virginia law, and unsupported by federal law: to require a plaintiff to prove an exception to a

25

federal defense in order to succeed in a state law breach of contract would invert the burden allocation of a state law defense of an intervening federal illegality, and would obliterate the prohibition against creating federal jurisdiction with a defense."). Here, if the Employment Agreement provided for the Allowance in Paragraph 4(b) after a "Change in Control" without any further limitation on its availability, Harvard could establish Plaintiffs' legal obligation to pay him the Allowance by simply citing to the language in Paragraph 4(b) and then setting forth facts sufficient to show that such a "Change in Control" had occurred. Harvard could thereafter plead a prima facie breach of contract case by alleging Plaintiffs' refusal to pay the Allowance and any injury he has suffered as a result of such refusal. See Sunrise Continuing Care, 277 Va. at 154 (quoting Filak, 267 Va. at 619). Harvard would not have to reference TARP at all to satisfy his pleading obligations for breach of contract. See Pinney, 402 F.3d at 442 (citing Franchise Tax Bd., 463 U.S. at 13-14). Under such circumstances, the existence of TARP's prohibition of golden parachute payments would arise only as a defense to Harvard's well-pled breach of contract claim, which is insufficient to support the exercise of federal question jurisdiction. See Franchise Tax Bd., 463 U.S. at 10-11, 16; see also Thompson v. Standard Oil Co. of N.J., 67 F.2d 644 (4th Cir. 1933) ("[W]here

a federal question is involved only by way of defense to a cause of action arising under state law ... that question must be passed upon in the first instance by the state courts."); Campbell, 2013 WL 652427, at *3. However, Plaintiffs do not rely solely on the existence of TARP's prohibition. Rather, Plaintiffs contend that, by signing the Letter, Harvard incorporated TARP's prohibition into the Employment Agreement and, therefore, Harvard cannot establish that Plaintiffs were under a legal obligation to pay him the Allowance without first showing that the Allowance is not a golden parachute payment as defined by TARP.

It is apparent from all of the relevant briefings before the Court that the parties hotly contest the significance of the December 31, 2008 Letter. Plaintiffs maintain that the Letter constitutes an amendment to the Employment Agreement, as suggested in Paragraph 3 of such Letter. See Compl. Ex. 2, ECF No. 1-5 (amending benefit plans to the extent necessary to give effect to various provisions, including the ban on golden parachute payments). Meanwhile, Harvard contends that the Letter constitutes, at best, a waiver of certain compensation provided for in the Employment Agreement and, therefore, operates as a defense to his threatened breach of contract action. The resolution of this dispute—the proper interpretation of the Letter and its scope—will determine

27

whether TARP arises as a necessary element of Harvard's breach
of contract claim or merely as a defense to such claim. The
question is governed by state contract law. See James v.
Circuit City Stores, Inc., 370 F.3d 417, 421-22 (4th Cir. 2004)
(citing Volt Info. Sci., Inc. v. Bd. of Trustees of Leland
Stanford Univ., 489 U.S. 486, 474 (1989) (interpretation of
private contracts is a question of state law)).

Where a dispute—even one involving a substantial question
of federal law—turns on a question of state contract law,
dismissal for lack of federal question jurisdiction is
appropriate. N. Jefferson Square Assocs, L.P. v. VA Hous. Dev.
Auth., 32 Fed. App'x 684, 687 (2002) (affirming dismissal for
lack of federal question jurisdiction in a breach of contract
action by the owner of low income housing apartments against the
state housing authority because the dispute "turn[ed] upon the
interpretation of the Mortgage Deed of Trust, the HAP Contract,
and related documents, a question of state contract law"). Such
a question of state law is best left to the courts of the
Commonwealth of Virginia to resolve. Given this significant,
threshold dispute between the parties, the Court finds that
Harvard's threatened breach of contract claim does not
necessarily raise a stated federal issue. Gunn, 2013 WL 610193,
at *5; see also Franchise Tax Bd., 463 U.S. at 13; Pinney, 402
F.3d at 442 (quoting Christianson, 486 U.S. at 808). This case

28

does not fall within the "'special and small category' of cases" that arise under state law but nevertheless support the exercise of federal jurisdiction. Gunn, 2013 WL 610193, at *5 (quoting Empire Healthchoice Assurance, 547 U.S. at 699); see also Pinney, 402 F.3d at 442.

The mere fact that TARP is implicated in the case is not enough to entice this Court to wade through the significant, threshold questions of state contract law. Although TARP's prohibition may arise at some point in the resolution of Harvard's threatened claim, and may at that time be an actual and substantial issue, the significant dispute between the parties concerning the interpretation of the December 31, 2008 Letter does not permit the Court to resolve the question concerning TARP at this time without upsetting the congressionally approved balance of federal and state judicial responsibilities. Gunn, 2013 WL 610193, at *6; see also Grable & Sons, 545 U.S. at 314; Franchise Tax Bd., 463 U.S. at 13. Therefore, the Court finds that the first alleged cause of action—Harvard's threatened breach of contract claim—does not support this Court's jurisdiction over the instant declaratory judgment action under 28 U.S.C. § 1331. To the extent TARP's prohibition later requires interpretation and application, the Court observes that state courts are as capable as federal courts in deciding federal and constitutional issues. See

Employers Res. Mgmt. Co., Inc. v. Shannon, 65 F.3d 1126, 1135 (4th Cir. 1995) ("There is no concern on our part with the competence of the state courts to decide issues of federal law.").

ii.    **Judicial Review Pursuant to 12 U.S.C. § 5229**

The Court next considers the second cause of action that Plaintiffs argue Harvard "could affirmatively bring" that would support federal jurisdiction of this action: a potential action pursuant to 12 U.S.C. § 5229 for judicial review of the Treasury's position that the Allowance is a golden parachute payment prohibited under TARP.    ECF No. 8 at 11-12 (quoting Columbia Gas, 237 F.3d at 370).

Plaintiffs assert that the Court would have jurisdiction of a review action pursuant to 12 U.S.C. § 5229 and that Plaintiffs would be a necessary party to such action under Federal Rule of Civil Procedure 19(a)(1).    Harvard responds that the proffered federal claim under 12 U.S.C. § 5229 is not "a claim arising under federal law that the declaratory judgment defendant could bring against the declaratory judgment plaintiff," and is therefore insufficient to support jurisdiction of the instant action.    ECF No. 9 at 7 (quoting Columbia Gas, 237 F.3 at 370) (emphasis added).

When determining whether a potential coercive action is sufficient to support federal jurisdiction of a declaratory

30

judgment action, the Courts looks to the complaint for declaratory judgment to determine "whether it seeks declaratory relief on a matter for which [the declaratory judgment defendant] could bring a coercive action arising under federal law against [the declaratory judgment plaintiff]." Columbia Gas, 237 F.3d at 370. Plaintiffs' Complaint seeks a declaration that TARP prohibits them from paying Harvard the Allowance. Although the Complaint briefly references the fact that Plaintiffs requested guidance from the Treasury following Harvard's resignation, the Bank alleges no facts concerning the nature of its communications with the Treasury nor the finality of the Treasury's decision concerning the Allowance. 12 U.S.C. § 5229 makes agency actions under TARP reviewable according to the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 et seq. The APA limits judicial review of agency actions to those actions "made reviewable by statute and [to] final agency actions for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Plaintiffs' Complaint sets forth no facts that would enable the Court to determine whether Harvard could, in fact, seek judicial review of the Treasury's alleged "guidance" concerning the Allowance. Thus, unlike the breach of contract action, about which the parties have argued extensively in their briefs, a potential action pursuant to 12 U.S.C. § 5229 is largely speculative and not clearly cognizable based on the

facts set forth in the Complaint. There are simply not enough facts alleged to show the existence of "a substantial controversy ... of sufficient immediacy and reality," based solely on the suggested 12 U.S.C. § 5229 review action, "to warrant the issuance of declaratory judgment." MedImmune, 549 U.S. at 127.

Alternatively, even if facts sufficient to establish such a controversy were properly before the Court, they would not show the existence of a controversy between these parties. See id. As Harvard notes, the Fourth Circuit has held that a coercive action supports jurisdiction of a declaratory judgment action when the declaratory relief sought is the "reverse" of such coercive action. See Columbia Gas, 237 F.3d at 370. An action for judicial review pursuant to 12 U.S.C. § 5229 is not the "reverse" of the relief Plaintiffs now seek. Instead, as Harvard argues, the reverse of Plaintiffs' claim that they are prohibited by TARP from paying the Allowance is a breach of contract claim for failure to pay the Allowance. Accordingly, the Court finds the alleged judicial review action pursuant to 15 U.S.C. § 5229 is insufficient to support federal jurisdiction of the instant action for the reasons stated above.

Because neither of the alleged coercive actions support this Court's exercise of jurisdiction in this case, the Court finds that it lacks an independent basis for jurisdiction of

this declaratory judgment action. Accordingly, the Court **DISMISSES** the action. Arbaugh, 546 U.S. at 514; Fed. R. Civ. P. 12(h)(3).

## V. ATTORNEYS' FEES

In addition to dismissal of Plaintiffs' Complaint, Harvard asks the Court to award him attorneys' fees pursuant to Paragraph 11 of the Employment Agreement. As the Court has previously noted, Harvard filed his own declaratory judgment action in the Norfolk Circuit Court on May 22, 2012 seeking a declaration that he is entitled to attorneys' fees and other litigation expenses under Paragraph 11. This action apparently remains pending before the Norfolk Circuit Court. Thus, the relief Harvard seeks is the same relief initially sought in (and still pending before) a state court. Accordingly, this Court declines to reach the question of Harvard's entitlement to such fees in advance of the Norfolk Circuit Court's interpretation of Paragraph 11. Harvard's request for attorneys' fees is, therefore, **DENIED**.

## VI. CONCLUSION

For all of the foregoing reasons, Harvard's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is **GRANTED**. Harvard's request for attorneys' fees is **DENIED**. Plaintiffs' Complaint for Declaratory Judgment is **DISMISSED**.

33

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to counsel of record for the parties.

**IT IS SO ORDERED.**

/s/ Mark S. Davis

Mark S. Davis
United States District Judge

Norfolk, Virginia
March 8 , 2013